IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TAYLOR R. BRYANT,<br><br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CASE NO. 1:24-CV-00926-BYP<br><br>DISTRICT JUDGE BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT & RECOMMENDATION** |

Plaintiff Taylor Bryant ("Plaintiff" or "Mr. Bryant") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). (ECF Doc. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **VACATED** and the case be **REMANDED**, pursuant to 42 U.S.C. § 405(g) sentence four. On remand, the ALJ should apply the standard of review articulated by the Sixth Circuit in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018) to any consideration of a prior ALJ's residual functional capacity findings.

## I.      Procedural History

Mr. Bryant filed a prior SSI application on December 19, 2018, alleging disability beginning on April 7, 2018. (Tr. 114.) On October 8, 2020, an Administrative Law Judge

1

("ALJ") found he was not disabled from December 19, 2018, the date the application was filed, through the date of the decision. (Tr. 111-25 ("2020 ALJ decision").)

Mr. Bryant filed the SSI application that is the subject of this appeal on February 28, 2022, alleging a disability onset date of April 1, 2021. (Tr. 49, 130-31.) He later amended the alleged onset date to February 28, 2022. (Tr. 240.) His application was denied at the initial level (Tr. 130-36) and upon reconsideration (Tr. 137-43). He then requested a hearing. (Tr. 160.) On April 27, 2023, a hearing was held before an ALJ. (Tr. 19-25.)

The ALJ issued an unfavorable decision on May 10, 2023, finding Mr. Bryant had not been under a disability since February 28, 2022, the date the application was filed. (Tr. 46-59.) Plaintiff requested review of the decision by the Appeals Council. (Tr. 7.) The Appeals Council denied his request for review on March 25, 2024, making the ALJ's decision the final decision of the Commissioner. (Tr. 1.) Mr. Bryant filed his Complaint seeking judicial review on May 28, 2024. (ECF Doc. 1.) The case is fully briefed and ripe for review. (ECF Docs. 7, 10, 11.)

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Mr. Bryant was born in 1994 and was 27 years old on the amended alleged disability onset date, making him a younger individual under Social Security regulations on that date. (Tr. 131.) He has at least a high school education. (Tr. 251.) Mr. Bryant has not worked since January 1, 2021, prior to the alleged onset date. (Tr. 250.)

### B. Relevant Treatment History

During the period under consideration, Mr. Bryant received mental health services for paranoid schizophrenia from the Nord Center starting in December 2020. (Tr. 419-582, 585-656, 674-82.) This consisted primarily of monthly therapeutic behavioral services with Elsa

2

Isaac, QMHS (*see, e.g.*, Tr. 575, 579, 585, 589, 603, 607, 611) and quarterly medication management sessions with Jessica Smith, MSN, APRN (*see e.g.*, Tr. 519, 565, 593, 619).

Mr. Bryant reported medication compliance at all of his medication management appointments during the relevant period, and usually reported that his medication was effective. (Tr. 548, 593, 619, 674.) MSN Smith consistently noted that Mr. Bryant spoke with a normal rate and tone, presented with normal and consistent mood and affect, had coherent thought processes, demonstrated good concentration and attention span, and possessed fair insight and judgment. (Tr. 550-52, 594-96, 621-23, 676-78.) She continued him on the same medications at nearly all appointments: an Abilify injection every three weeks and one 10mg oral Abilify tab per day. (Tr. 553-54, 598-99, 624-25.) In March 2023, she increased his oral Abilify dosage to 15mg per day due to reported increased paranoia the previous month. (Tr. 679.) This is the last medication management appointment included in the record.

At Mr. Bryant's behavioral services appointments during the relevant period, Ms. Isaac consistently documented that his mood was normal, his thought processes were logical, and his behavior was pleasant. (*See, e.g.*, Tr. 532-33, 540-41, 586, 608, 629-30, 650-51.) At times, she accompanied Mr. Bryant to receive his Abilify injections, helped him pick up medications, and assisted him in navigating community resources/basic needs. (Tr. 587, 609, 613, 617, 631, 655.)

C. **Relevant Opinion Evidence**

    1. **Treating Provider Medical Source Statement**

On July 26, 2022, MSN Smith completed a Medical Source Statement regarding Mr. Bryant's mental impairments. (Tr. 583-54.) She reported that she provided medication management for Mr. Bryant, and he was compliant with treatment. (Tr. 583.) She opined that he: would require breaks two to three times more frequently than every two hours of an eight-

3

hour work day; would be off task up to 15% of the time in an eight-hour workday; would be unable to engage in socially appropriate interactions with coworkers 30% of the time; would be unable to engage in appropriately deferential interactions with supervisors 20% of the time; and would require more than ordinary supervision due to his paranoia, anxiety, and difficulty in social situations. (*Id.*) She explained that Mr. Bryant's paranoid schizophrenia made it difficult for him to have appropriate social interactions, stay on task, and be productive. (*Id.*)

### 2. State Agency Psychological Consultants

On May 7, 2022, at the initial level of administrative review, state agency psychological consultant Robert Baker, Ph.D. completed a Psychiatric Review Technique ("PRT") (Tr. 133-34) and mental RFC evaluation of Mr. Bryant (Tr. 135). For the PRT, Dr. Baker noted that he reviewed Plaintiff's records and found no new and material changes since the 2020 ALJ decision, and therefore adopted the PRT findings from the 2020 ALJ decision. (Tr. 133-34.) For the mental RFC, Dr. Baker stated:

> I have reviewed the file and do not find new and material evidence. The MRFC given is an adoption of the MRFC findings from the ALJ decision dated 10/8/20, based on AR98-4. . . . The checkbox was selected as a systems workaround to complete medical assessments in compliance with the Drummond/Dennard ARs.

(Tr. 135.)

On July 25, 2022, at the reconsideration level of administrative review, state agency psychological consultant Aracelis Rivera, Psy.D., reviewed the evidence in the file and adopted Dr. Baker's PRT and mental RFC findings. (Tr. 140-42.)

### III. Standard for Disability

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

4

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform other work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his May 10, 2023 decision, the ALJ made the following findings:[1]

1. The claimant has not engaged in substantial gainful activity since February 28, 2022, the application date. (Tr. 51.)

2. The claimant has the following severe impairments: schizophrenia, Asperger's syndrome, anxiety, depression, learning disability, and substance dependence. (*Id*.)

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 52.)

4. The claimant has the residual functional capacity to do a full range of work at all exertional levels but with the following non-exertional limitations: no climbing of ladders, ropes, or scaffolds, must avoid all exposure to hazards, such as unprotected heights, dangerous moving mechanical parts, and commercial motor vehicles, has the ability to carry out, concentrate, persist, and maintain pace for completing simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions with occasional changes in a routine work setting, no interaction with the general public, occasional interaction with coworkers and supervisors, no team or tandem tasks, and work instructions provided verbally, or by short demonstration rather than in writing. (Tr. 54.)

5. The claimant is unable to perform any past relevant work. (Tr. 56.)

6. The claimant was born in 1994 and was 27 years old, defined as a younger individual age 18-49, on the date the application was filed. (Tr. 57.)

7. The claimant has at least a high school education. (*Id*.)

8. Transferability of job skills is not material to the determination of disability. (*Id*.)

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id*.)

---

[1] The ALJ's findings are summarized.

Based on the foregoing, the ALJ found Mr. Bryant had not been under a disability, as defined in the Social Security Act, since February 28, 2022, the date the application was filed. (Tr. 58.)

## V. Plaintiff's Arguments

In his sole assignment of error, Mr. Bryant argues that the ALJ "deprived him of the *de novo* review of the medical evidence that he was entitled to by law" when she evaluated his SSI benefits application "with the understanding that she was *bound* by the prior ALJ decision pursuant to *Drummond* [*v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)]." (ECF Doc. 7, p. 1 (emphasis in original).) Instead, Mr. Bryant asserts that the ALJ should have applied the standard of review more recently outlined in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which "granted ALJs more flexibility in their decision making by merely requiring them to use a prior ALJ's RFC as a reference point." (*Id.*)

## VI. Law & Analysis

### A. Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). "Substantial evidence is more than a scintilla of evidence but less

than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004))). A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**B.     Sole Assignment of Error: The ALJ Erred When She Found the RFC from the 2020 ALJ Decision to be Binding Under *Drummond***

In his sole assignment of error, Mr. Bryant argues that the ALJ incorrectly applied *Drummond*, 126 F.3d 837, in contravention of the Sixth Circuit's more recent decision in *Earley*, 893 F.3d 929, when "she considered the RFC finding of the prior ALJ to be a mandatory starting point for her analysis of Plaintiff's new application for benefits that covered a different time period."  (ECF Doc. 7, p. 8.).  The Commissioner responds that the ALJ—despite her use of "problematic language suggesting she was bound by the prior decision"—effectively followed *Earley* by "providing a review and analysis of the new evidence relevant to the current claim period, while also considering the findings from the prior decision."  (ECF Doc. 10, pp. 8, 9.)

**1.     Standard of Review Applicable of Consideration of Prior ALJ Decisions**

In *Drummond*, the Sixth Circuit cited to "the principles of res judicata" in holding: "Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d at 841-42.  In a related Acquiescence Ruling, the Social Security Administration ("SSA") applied *Drummond* as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method of arriving at the finding.

AR 98-4(6), 63 Fed. Reg. 29771, 29773 (June 1, 1998).

More recently, in *Earley*, the Sixth Circuit reexamined *Drummond* and its reliance on principles of res judicata, and observed: "Unusual facts, it seems to us, led to some overstatement in *Drummond* but not to an incorrect outcome." 893 F.3d at 933.  While *Drummond* was decided based on res judicata principles, the *Earley* court clarified that "res judicata only 'foreclose[s]

9

successive litigation of the very same claim,'" while "'a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994.'" *Id.* (citations omitted). Thus, the *Earley* court made it clear that the doctrine of res judicata does not apply when a claimant has filed a new application seeking benefits for a new period of disability.

The Sixth Circuit went on to state that the inapplicability of res judicata to such cases "helps to explain why *Drummond* referred to 'principles of res judicata' – with an accent on the word 'principles.'" *Id.* at 933 (citing 126 F.3d at 841-43). The court described the applicable principles as "[f]inality, efficiency, and the consistent treatment of like cases," and explained that an ALJ "honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record." *Id.* (citations omitted). Accordingly, the Sixth Circuit held: "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.* The court refused to hold that an ALJ "should completely ignore earlier findings and applications," explaining that "[f]resh review is not blind review" and "[a] later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

More recently, the Sixth Circuit discussed the application of *Earley* in several unpublished decisions. In *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662 (6th Cir. Mar. 20, 2024), the Sixth Circuit held that an ALJ's "misstatement of the legal standard" by saying that a prior ALJ's RFC was "binding" did not warrant remand where the record was "replete with evidence" that the ALJ "reached an independent conclusion while recognizing that he was not bound by the prior decision—as required under *Earley*." *Id.* at *4-5. The *Dennis D.* court explained that the question before the court was whether the ALJ, "despite

10

this misstatement of the legal standard, . . . treated his review of the new application as if he were bound by the prior decision, thereby depriving [the plaintiff] of a 'fresh look'" under *Earley*. *Id.* at *4. Later, in *Gooden v. Comm'r of Soc. Sec.*, No. 23-3927, 2024 WL 2830817 (6th Cir. June 4, 2024), the Sixth Circuit reiterated that "the key question is whether the second ALJ treated the new application 'as if' they were 'bound by the prior decision.'" *Id.* at *4 (quoting *Dennis D.*, 2024 WL 1193662 at *4). The court explained that courts "need determine only whether the second ALJ *actually* afforded the new application a 'fresh look' under *Earley*, notwithstanding rote recitation of a legal standard suggesting otherwise." *Id.* (emphasis in original).

2. **The ALJ Did Not Clearly Afford the New Application a "Fresh Look"**

The Commissioner asserts that the ALJ in this case, "as in *Gooden* and *Dennis D.*, . . . complied with *Earley* by providing a review and analysis of the new evidence relevant to the current claim period, while also considering the findings from the prior decision." (ECF Doc. 10, p. 9.) Mr. Bryant argues in response that the decisions in *Dennis D.* and *Gooden* are distinguishable because the ALJs in those cases found new and material evidence of changed conditions and declined to adopt the prior ALJs' RFC findings. (ECF Doc. 11, pp. 1-3.) Here, in contrast, Plaintiff asserts that there is no similar evidence that the ALJ conducted a fresh review after she "erroneously stated she was bound by the prior ALJ's RFC finding." (*Id.* at p. 2.)

> On the first page of the ALJ's written decision in this case, she stated the following:
>
> Pursuant to Acquiescence Rulings 98-3(6) and 98-4(6), absent new and material evidence documenting a significant change in claimant's condition, findings required under the applicable sequential evaluation process for determining disability made in a prior hearing decision by an Administrative Law Judge (ALJ) are <u>binding</u> on the present adjudicator provided the new claim arises under the same title of the Social Security Act. <u>The findings contained in the prior final and binding decision issued on October 8, 2020 remain applicable and are adopted herein</u> []. There is no new and material evidence documenting a significant change in the claimant's condition since the amended alleged disability onset date of February 28, 2022.

11

(Tr. 49 (emphasis added) (citation omitted).) Thereafter, the ALJ repeatedly noted that she was adopting the prior ALJ's findings under the described standard. In support of her finding of moderate limitations in mental functioning at Step Three, the ALJ found the medical opinions of the state agency psychological consultants persuasive and "adopt[ed] the findings of the prior ALJ decision," noting that "[t]he record demonstrates no significant change in the claimant's symptoms since the prior decision." (Tr. 52.)[2] The ALJ again noted the persuasiveness of the state agency opinions in her Step Four RFC analysis, and "adopt[ed] the findings of the prior ALJ decision" while noting that the medical evidence "documents few changes in the claimant's condition since the prior decision" as well as "some improvement in the claimant's symptoms with medication." (Tr. 56.) On the basis of these findings, the ALJ adopted the same RFC that was articulated in the 2020 ALJ decision, with the exception of one modification that was made solely for the purpose of "provid[ing] a more vocationally relevant [RFC]."[3] (Tr. 54, 56.)

Given the ALJ's explicit statement that the 2020 ALJ decision was "final and binding" absent "new and material evidence documenting a significant change in claimant's condition" (Tr. 49), and subsequent findings that the new records documented "no significant change in the claimant's symptoms" and "few changes in the claimant's conditions" since that prior decision (Tr. 52, 56), Mr. Bryant argues that he was deprived of the required *de novo* review and "faced an unwarranted presumption that the findings at the prior hearing were correct" (ECF Doc. 7, p. 11). The Commissioner acknowledges that "the ALJ used problematic language in suggesting

---

[2] Mr. Bryant suggests, but does not explicitly argue, that the ALJ's reliance on medical opinions from state agency psychological consultants who themselves adopted the prior ALJ's RFC contributed to the error. (ECF Doc. 7, p. 11.) The undersigned finds this argument to be underdeveloped and therefore waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal citations omitted) (alterations in original).

[3] The Commissioner does not argue that this modification to the RFC was made to address new evidence or changed medical conditions, and the context clearly reflects that the modification was not intended for that purpose.

she was bound by the prior decision," but asserts that "the remainder of the decision shows that the ALJ still engaged in the 'fresh review' of the record contemplated by *Earley*." (ECF Doc. 10, p. 8.) In particular, the Commissioner asserts that the ALJ summarized Mr. Bryant's new allegations and recent hearing testimony and "detailed the new evidence, which overwhelmingly suggested that Plaintiff was stable and benefiting from treatment." (*Id.* (citing Tr. 55-56).)

The ALJ's written decision does reflect that she considered new evidence. At Step Two, she identified a new "non-severe" impairment, but found that Mr. Bryant's myopia and astigmatism caused "no more than minimal limitations in the claimant's ability to perform basic work-related functions." (*Compare* Tr. 51-52 *with* Tr. 117.) At Step Three, the ALJ did not separately discuss the evidence supporting her findings as to each of the four categories of mental functioning, but did provide the following general explanation to support her finding that there was "no significant change in the claimant's symptoms since the prior decision":

> Treatment records generally document clear and expressive speech, logical thought process, neutral mood, full affect, fair insight and judgment, and average intelligence []. However, there was some evidence of paranoid thoughts an [sic] guarded affect. The claimant was cooperative, but there was some impairment in attention/concentration.

(Tr. 52 (citations omitted).) At Step Four, the ALJ provided the following discussion of new testimony and medical evidence relating to Plaintiff's severe impairments:

> At the hearing, the claimant alleged that he does not leave his house often. However, he is able to leave home alone and goes to appointments and stores. The claimant also alleges that he tries to avoid others and is paranoid. He has a difficult time expressing his anger and focusing.
>
> The claimant was evaluated for outpatient mental health treatment in December 2020 []. The claimant reported a history of Asperger's syndrome and schizophrenia. On examination, the claimant's speech was clear; however, he expressed paranoid thoughts. Thought process was logical, mood neutral, and affect full. The claimant was cooperative, but there was impairment in attention/concentration. Intelligence was average and insight and judgment fair.

13

> On follow-up, the claimant was expressive and speech was clear []. Thought process was logical, associations intact, mood euthymic, memory intact, and insight/judgment fair and the claimant was generally cooperative and pleasant. These findings were essentially unchanged on follow-up except was guarded with flat affect at times []. Attention and concentration were also intact []. He made some progress with treatment []. The claimant was also helping care for his grandmother, mother, and brother with whom he lives at times, including preparing or purchasing meals []. The claimant reported difficulty focusing without his medications; however, his symptoms improved with treatment []. Treatment records also document ideas of reference and paranoia when not on medication [].

(Tr. 55 (citations omitted).)  She also discussed MSN Smith's new medical opinion:

> Jessica Smith, MSN, completed a medical source statement in July 2022 []. Ms. Smith concluded that the claimant would require additional breaks 2-3 times a day and would be off task 15% of the workday. He would also be unable to engage appropriately with co-workers 30% of the workday and supervisors 20% of the workday. The claimant would require more than ordinary supervision and would miss work twice a month.
>
> The undersigned does not find the opinions of Ms. Smith persuasive as they are not supported by her own treatment records and are not consistent with the weight of the objective evidence of record. As outlined above, treatment records generally document clear and expressive speech, logical thought process, neutral mood, full affect, fair insight and judgment, and average intelligence. There was some evidence of variable attention/concentration, paranoid thoughts, and guarded affect; however, the claimant was cooperative and pleasant.

(Tr. 56 (citation omitted).)  Thus, the ALJ clearly did consider and discuss some of the new testimony and medical evidence post-dating the 2020 ALJ decision in support of her decision.

The question that remains under *Earley* is whether the ALJ—despite considering new evidence—nevertheless treated Mr. Bryant's present application for SSI benefits "'as if' [she] were 'bound by the prior decision.'" *Gooden*, 2024 WL 2830817, at *4 (quoting *Dennis D.*, 2024 WL 1193662 at *4).  The plain language of the ALJ's written decision suggests that she did.  She explicitly relied on the outdated standard when she specified at the beginning of her decision that the 2020 ALJ decision was "final and binding" absent "new and material evidence documenting a significant change in [Mr. Bryant]'s condition."  (Tr. 49.)  Thereafter, when she discussed new

14

evidence at Steps Three and Four of the sequential analysis, she did so in support of her findings that the evidence demonstrated "no significant change," "few changes," or "some improvement" since the 2020 ALJ decision. (Tr. 52, 56.) This language clearly suggests that the ALJ reviewed the new evidence to assess whether it showed "a significant change" in Mr. Bryant's condition since 2020, and no other part of the ALJ's analysis clearly undercuts her explicit statement that she considered the 2020 ALJ decision "final and binding" absent such evidence.

The Sixth Circuit's recent decisions applying *Earley* do not require a different analysis. Although the ALJ in *Dennis D.* had described a prior ALJ decision as "binding," the Sixth Circuit observed that "the very next sentence" in the ALJ's decision was a finding that the plaintiff had "'produced new and material evidence documenting a significant change in his condition.'" 2024 WL 1193662, *4. In that context, the court found the ALJ's description of the prior ALJ decision as "'binding' merely reflect[ed] a scrivener's error." *Id.* Further, the *Dennis D.* court went on to detail other evidence that the ALJ "did not consider himself bound by the earlier ruling," including his rejection of the prior ALJ's findings regarding the severity of the mental impairments and ultimate adoption of a different RFC. *Id.* at 5. The court found the record was "replete with evidence" that the ALJ "reached an independent conclusion while recognizing that he was not bound by the prior decision—as required under *Earley*." *Id.*

In *Gooden*, the Sixth Circuit similarly found that an ALJ "properly gave 'fresh review' to [plaintiff]'s new application by stating that she was not bound by the first ALJ's findings and independently assessing each allegation in [plaintiff]'s new application." 2024 WL 2830817, *3. As in *Dennis D.*, the ALJ in *Gooden* said that she was required to adopt the prior ALJ's RFC absent new and material evidence but went on to find that the plaintiff had presented such new and material evidence and declined on that basis to adopt the prior ALJ decision. *Id.*

15

Here, unlike *Dennis D.* and *Gooden*, the ALJ did not undermine her recitation of the outdated standard by finding that she was not bound by the prior ALJ decision or declining to adopt the prior ALJ's RFC. Quite the reverse, she explicitly adopted the prior ALJ's findings after stating that she considered the prior ALJ decision "final and binding" absent "new and material evidence documenting a significant change in claimant's condition." (Tr. 49, 52, 56.)

The Sixth Circuit in *Earley* held that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, *albeit not binding*, consideration in reviewing a second application." *Earley*, 893 F.3d at 933 (emphasis added). Here, in contrast, the ALJ held that the "findings contained in the prior final and *binding* decision . . . remain applicable and are adopted herein" because "[t]here is no new and material evidence documenting a significant change in the claimant's condition since the amended alleged disability onset date of February 28, 2022." (Tr. 49 (emphasis added).)

The question before this Court is whether the ALJ, "despite [her] misstatement of the legal standard, . . . treated [her] review of the new application as if [she] were bound by the prior decision, thereby depriving [Mr. Bryant] of a 'fresh look'" under *Earley*. *Dennis D.*, 2024 WL 1193662 at *4. The plain language in the ALJ's written decision suggests that she did treat the 2020 ALJ decision as final and binding absent evidence of a significant change in Mr. Bryant's condition. This was a harmful error.[4] She also failed to build an accurate and logical bridge between the evidence and the result when she used language that clearly suggested she considered the 2020 ALJ decision to be more than "a legitimate, albeit not binding, consideration in reviewing a second application." *Earley*, 893 F.3d at 933.

---

[4] The Commissioner has made no meaningful argument that the error was harmless, and any such argument is waived. *See McPherson*, 125 F.3d at 995-96.

16

For the reasons set forth above, the Court finds that the ALJ decision lacks the support of substantial evidence and fails to build "an accurate and logical bridge between the evidence and the result." *See Fleischer*, 774 F. Supp. 2d at 877. Accordingly, the undersigned concludes that remand is appropriate, so that the ALJ may "have another opportunity to review the application under the correct standard." *Earley*, 893 F.3d at 934.

## VII. Recommendation

For the reasons set forth above, undersigned recommends that the final decision of the Commissioner be **VACATED** and the case be **REMANDED**, pursuant to 42 U.S.C. § 405(g) sentence four. On remand, the ALJ should apply the standard of review articulated by the Sixth Circuit in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018) to any consideration of a prior ALJ's residual functional capacity findings.

May 5, 2025

                                            */s/Amanda M. Knapp*
                                            AMANDA M. KNAPP
                                            United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).